All rise. The Illinois Department of Corp. 50th Division is now in session. Honorable Justice Barry L. Bickoff is residing. Please sit down. Would the clerk please call the case. 124-1235. Michael Beard v. Monsanto Co. Good morning, counsel. Just to remind you of what you probably all know, 20 minutes aside, with five additional minutes, you don't need to reserve it for the appellant for rebuttal. Keep your voices up, because this microphone records, but it does not amplify in any way. So whenever you're ready, we're ready. And we're pretty ready.                    We lose some time. Don't worry too much about the time, but we will stop you at some point. All right. May it please the Court. Michael Beard v. Monsanto Co. My name is Martin Siegel. I represent the plaintiff appellants in this appeal. Three prejudicial errors by the trial court warrant a new trial here. First, the trial court's refusal to give the long-form charge of Proximate Cause 1501. So the two sentences that appear in the first paragraph bracketed, pointing out to the jury, informing them that the cause pinpointed by the plaintiff doesn't have to be the only cause or the last cause, and that it can combine with other causes. This was the case almost entirely about causation and combined causation, and failure to give that instruction, in our view, warrants reversal. The second error was the trial judge's refusal to remove a juror who repeatedly expressed hostility to the plaintiff and the plaintiff's presentation. This happened on multiple occasions. It's true that that juror also, on a couple of occasions, expressed willingness to keep an open mind. We believe we were entitled to more than equivocation. We were entitled to a juror who was straightforwardly neutral and not someone who repeatedly expressed hostility to our case. We think it was a reversible error not to have removed that juror when the problem cropped up. And finally, the third error was the trial court's denial of our motion for a continuance or, if necessary, a mistrial, because our two lead lawyers came down with COVID. Our plaintiffs had to leave the courtroom. They were immunocompromised. This happened in the last week of trial. It put us at a severe disadvantage as we tried to close the trial, cross-examine Monsanto's last witnesses and give the closing argument. And we think that, too, was prejudicial error. So let me begin with the 15-1 point. When I say this case was almost entirely about causation, I think the best illustration of that were the first words out of Monsanto's counsel's mouth in opening argument. She said, quote, this is a case about what caused these four plaintiffs' non-Hodgkin's lymphoma. And, indeed, that was an accurate forecast of how the trial unfolded. It was five weeks of causation evidence. And Monsanto had almost no other defense to this case other than causation. So they put on a whole raft of witnesses to testify to a couple of things. First, that, of course, the evidence showed that Monsanto products, Roundup and PCBs, had not caused, did not cause NHL. But they also felt the need to deposit a buffet of alternate possible causes. Of course, they wanted to tell the jurors why these people had NHL. And so there was a raft of other possibilities. Their own internal disease processes, cell replication, other viruses, other pesticides they might have used, smoking, obesity, burn pits. And so even with the short 1501, the plaintiffs were still able to argue that the Monsanto and the PCBs and the Roundup was a cause of the plaintiffs' injuries. Yes. So not the cause, but a cause of the injuries. So a couple of points about that, Your Honor. That's certainly an argument that Monsanto makes. We were able to argue it in the sense that, of course, the lawyers can argue what they want to argue. It includes the argument. And we tried to argue that. We did argue that. The reason we don't think that mere reliance on a cause, that one word, that one syllable, is enough to fully and fairly inform the jury comprehensively of the important legal principles here is twofold. First of all, the Blavich Supreme Court opinion, which we rely pretty heavily on, the judge used the a cause formulation there. The judge changed that cause to a cause. It went out of the way, or his way, in that case, to make sure the jury understood it was a cause. But the Supreme Court said that's not enough. The Supreme Court still reversed in that case because the law form wasn't given. So we think that's a pretty definitive indication that a cause doesn't do it. Secondly, if a cause was enough, if just that one syllable was enough, then you wouldn't need the next two sentences. The law form wouldn't exist, right? Like, the law form exists for a reason. It's because a cause doesn't quite do it. It doesn't convey the notion that combined cause can result in the plaintiff's injury. Or if there's multiple, if there's more than one defendant. Well, that's one scenario, sure, if there's more than one defendant. But we just think that after a five-week trial where causation is so pivotal, it's the only issue the parties are fighting about in this extremely complicated case, to rest everything on one syllable, it just doesn't fully inform the jury. One last point I'd make, because your question started out when counsel was able to make the argument. We did make the argument. We made the argument because it's such an important part of this case. But counsel's argument is not a substitute for the court's instructions. Jurors well understand that when counsels are making their final presentations, it's adversarial. It's slanted. They're getting, counsels, they're getting a one-sided, basically, view of the evidence and of the law. There's only one person in that room who the jurors understand speaks neutrally and conveys the applicable legal principles, and that's the judge. Jurors take the law from the judge, not from the parties. So, respectively, I don't think it matters much that we, you know, show our counsel was able to make the argument. He did, but it's not the same as an instruction. Does it matter that in Vladovich, there was also an additional instruction which said that the dangerous condition was the proximate cause of the plaintiff's injury, and that that burden was on the plaintiff to prove that? Yeah. There was an additional instruction in Vladovich which was not given here, which, I think, I'm asking you, does that not distinguish that case from this one? I don't think it distinguishes it meaningfully, but right after, in the Vladovich opinion, right after that recitation of what I think was instruction four in that case, the Supreme Court goes out of its way to say the plaintiff isn't challenging the third point there, which is the use of the A versus the E. So that wasn't an issue in the case. But they did say we are of the opinion in instruction number 11, the plaintiff given and defended instruction number four. They did. There's no real indication of, you know, one versus the other. I guess what we're hanging our hat on is that the Supreme Court, as I said, seemed to say that, you know, hey, this doesn't matter because the plaintiff isn't complaining about it. Also, earlier in the instruction, the judge did say a cause. So there's a little, you know, granted there's some inconsistency. When the judge is defining proximate cause, if you'll look up the page there in that opinion, she defines proximate cause as 1501 does and says a cause. And again, she did that. I keep saying she, I don't know if the trial judge is a he or she. She. It should be. It certainly should be. If the judge went out of his or her way to change that to a. So the definition of proximate cause said a cause. Later, it gets a little confusing because there's a recitation of negligence and it says the proximate cause. So I grant there's that confusion. I grant that the Supreme Court kind of lumped those together. It seems to us, especially in the explanatory portion of the opinion, which isn't very long, but it does seem to us that the Court's focusing on 1501 and not the other part of it. Let me ask you, in your view, because causation is very often the issue or an issue, when is the short form appropriate? I think the short form might be appropriate in a number of scenarios. In a less complicated case. In a case with lots of other issues. I mean, I'm not saying it's appropriate or inappropriate. I know the courts have wide discretion here and I know there are a lot of decisions to say. And the notes in you suggest that it is appropriate in some cases. I do. I do want to talk about the notes in you in a second. But to answer the first question, I think it's appropriate in a more garden variety case. I think it gets less and less appropriate the more that a complicated, lengthy trial boils down to essentially a single issue. And it's not just, I mean, Mazzino's kind of accused of saying, oh, you've always, now they're saying you've got to have a long form in every case. We're not saying that at all. We're saying that in a complex case, goes on for weeks, in a difficult subject matter like this, where not only causation is the issue, but combined causation. Multi-factorial causation is the issue. That's the scenario where this instruction is most important. If this case, if you didn't have it in this case, where it's all about causation, it's a complicated technical subject matter, the parties, the evidence is closely divided. Both sides brought good experts that are fighting it out over causation. And all the experts agree. One thing they all agree on is that NHL and cancer is multi-factorial. That you can have a predisposition and then you get an environmental hit from something and that triggers the cancer. All the experts agreed on that, so our defense, a big part of our defense, was this notion of combined or multi-factorial causation. We had to say, yeah, those guys were, you know, we're not disagreeing when the defense experts come along and say, you know, a lot of NHL was caused by cell replication, or you can have other pesticide exposure, some of the studies don't account for that. We're not, we're not disproving all of that necessarily, but we are saying you can have both. And as you pointed out, you know, that was part, a little bit of our closing argument. And so in a case that, where a big part of our presentation has to be combined causation, when else would you have this instruction? I mean, unless you're going to say, well, the discretion is total, and we're never going to reverse for the failure to give the full instruction, I don't see when else, you know, what other case would come along that's a better candidate for it. And the rest of the... So it's just a single clause, and it either did or it didn't. The house, the brick either fell on them or it didn't, or something very simple, then maybe the short form wouldn't matter as much as what you're saying. I just think this case, this case is fairly unique. It's certainly not the only combined causation case, but it's a complicated, toxic tort. Difficult subject matter, scientific subject matter for the jury boils down to this main issue. And before we can say, as I think Monsanto is more or less saying, before we can say, well, this is just fully within the discretion of the judge, and, you know, you can't... The short form is okay almost all the time. The long form is okay, too, even when it's not necessary. But it's really just the judge's discretion. Vlavic refutes that. Vlavic is a situation where the court reversed precisely because of the failure to give a full instruction on combined proximate cause. So Vlavic says, yeah, there are some circumstances where it's so serious that you reverse. I concede that's not most cases. But this case, absolutely. So if I could, I'd like to move through the sort of main reasons, I think, that Monsanto argues that 1501 in its long form is not appropriate here. Mainly they argue that it's got to be two tort visas, the alternate, the other suggested causes. And, you know, that's not what happened here. Although, of course, actually some of these other causes potentially could be other tort visas. They just don't happen to be defendants. Yeah, they're not defendants. Right. So the reason we think they've got it wrong in arguing that 1501 in its long form only applies to multiple tort visas is... There's several points there. First, the instruction itself doesn't say that. The instruction itself speaks of causes, not negligent actors, not tort visas, not negligence. It just says causes. And, of course, it's well established in Illinois law that naturally occurring causes, like the weather or your own disease process, can eliminate a defendant's liability, cut into a plaintiff's recovery. There can be other causes of injury that factor into a case that are not from tort visas. And 1501 just says causes. But maybe more importantly, the second paragraph in 1501, also bracketed, which we didn't ask the judge to charge here, but I think it's relevant to the meaning. The second paragraph says it's not a defense that something or someone else may have been a cause of the injury. The something is not a tort visa. Something implies, or at least it can imply, something like the weather, like in an auto case or a naturally occurring disease. They really hang their hat on the notes on use. There's a sentence in the notes on use. The next sentence in the notes on use, however, referred to outside instrumentalities. Again, that's a suggestion that the cause, the alternate cause, can be something other than another negligent person or another defendant or a tort visa. Same is true in the comments. You look in the third paragraph of the comments. There's a reference to something. So I acknowledge there's some inconsistency in the notes on use, just like, frankly, there's some inconsistency in the case law here. But what ought to govern is the language of the instruction. The instruction just says cause. Maybe as important, there's no reason why we would have two rules here when it comes to alternate causation, one for a tort visa and one for something that's naturally occurring. That doesn't make any sense. They both are exactly the same in that they can combine with the thing the plaintiff is pointing to to cause an injury, and the jury's entitled, therefore, to know that that causation, or rather that combination, is okay. And you can still have causation when there's a combined effect of factors. It doesn't matter that the other factor is produced by a tort visa or produced by the weather or produced by somebody's body. Why would it matter? There's no reason given for the distinction, and Monsanto is arguing for sort of two separate rules here. But then the rationale that the trial court fought was because there was only a single defendant, there was no need for the whole party. I think so. If you read the trial, I don't think the trial court understood it completely, but at least at trial, there's a different rationale than the post-verdict decision. At trial, though, what the trial court seemed to get hung up on was that there are two products, and so the judge said, well, we don't know which product hit him first, and that's not, that wasn't the basis of our request. So, I mean, it doesn't matter, at least in our view of 1501, whether there were one defendant, two defendants, or ten defendants. Monsanto, to this moment, has not offered any reason why there ought to be this kind of two-tiered rule or the distinction between tort visa cause and something else causing it. Third, I would say, of course, there's just a number of other cases that we rely on here, even aside from Blavich. There's Andrade, there's Douglas, there's Smith. These are cases where courts of appeals recognize that the alternate cause can be something other than a person or a tort visa. And I may be wrong, but did you cite any case other than Blavich where they reversed because of the giving of the short form as opposed to the long form? The other case we cite that's closely related, it's not 1501, it's Elig. In the Elig case, that was a case about sole proximate cause, but of course that's if you're talking about proximate causation, very close cousin, I think. And what we take from Elig, and what I think is most important here, is the recognition of the court of appeals in that case that when the evidence is closely divided, that's when you need to get these jury instructions right. That's when it matters most. That's when the leeway, to put it in a particular way, that's when the leeway shrinks a bit. And we think this is that case where, you know, well litigated on both sides, well tried for weeks, causation witnesses on either side of the jury could have believed. And this point about combined causation was essential. Does it matter in making that calculus whether this was a closed case if the jury was only out three and a half hours? Is that relevant? Well, I mean, I would of course argue that. They do accurately instruct it might have taken longer. You know, I don't know. I don't know. I never know. I guess I can be cynical and say another reason is because one of the jurors hated this. But I do want to move on to that point. But right now, and of course, I don't know in the end. And I don't think, I feel like it's fair to infer that this was a slammed on case because the jury was out for three hours. We don't know why the jury did what it did. Turning, though, to the jury, that's a good question. I mean, that's our second point unless the court has other questions about the 1501 issue. Well, this trusted juror started his service in jury selection by expressing reservation, to put it kindly, unhappiness at being on the jury because of the financial sacrifice. Not uncommon. Not uncommon. Yeah, sure. I mean, no one loves jury service. Sure. Not uncommon. I think what sort of spun out afterwards,  is a bit uncommon. So, what happened after that, and Monsanto makes the point we didn't object to the juror, juror seated, that's fine. Next day, apparently, it's on the record, but everybody talks about it, no doubt it happened, the juror throws some kind of tantrum or tirade, has to be threatened with contempt by the judge to continue on, points at plaintiff's counsel and says, I'm not going to listen to you anymore. Now, Monsanto suggests that didn't happen or that it's on the record or we can't rely on it. But, when, two weeks later, the... So, there's, there's a juror-initiated contact with the lawyer in the case, and the lawyer doesn't disclose it to the judge. No, no, I'm sorry, you're wrong. I was confused because how could this have happened and not been made part of the record? I don't, I don't know why it was, it must have been perhaps before they started. It started, I don't know why it's not on the record, but it certainly happened in Milford Court. Everybody saw it.  so the, and that's what prompted the threat of contempt. Yes. Yes. Yes. This outburst happened, the judge had to rein in, and, and, the reason we say that he pointed at the plaintiff and said, I'm not going to listen is because plaintiff's lawyer, two weeks later, when this came up again, tells the judge, recounting what happened two weeks earlier, and says, remember, he pointed at us and said, I'm not going to listen. So Monsanto says, we can't rely on that, it's not on the record. I mean, I don't, unless we're going to, there's no reason to think our lawyer was lying about it. It was only 14 days earlier. Nobody, most importantly, when that, when our lawyer said it, nobody corrected him and said, what are you talking about? That didn't happen. It's nothing like that. But regardless, that, that one sentence is not really, you know, the end-all, be-all here. Except, aside from that initial outburst on day one, two weeks later, the judge, sorry, the juror, writes a letter to the judge and unloads on the plaintiff's lawyer and on the plaintiff's presentation, this is wasting my time, why don't they get to the essentials of this case, we're here on day eight, you know, I thought I was going to be done in two weeks, now it looks like Christmas. A whole long litany of complaints about the plaintiff's presentation. The judge, quite accurately, more than once, calls this toxic. And seems, if you read the record, pretty close to removing this, this juror. They bring in the juror for questioning, and again, now, granted, in the letter, and then again in questioning, the juror says, I'm keeping an open mind, but then proceeds, again, to attack plaintiff's counsel and their presentation. Again, all the same complaints. And the judge recognized that this is, it was more than just the procedural aspect of, you know, you're too slow with the documents, but the judge said, he's attacking your presentation, I think, I'm paraphrasing. So then, Monsanto, understandably, wants to rehabilitate this juror. And asks the classic last question we always ask. So, the trial judge initiated the question of the juror. Yes, after that note. Yes. And then, then allowed lawyers in the case to question a sitting juror. Yes. And all, obviously, out of the presence of everybody else, but yes. Right. And, and the lawyers had no problem with that. No problem with questioning the juror. They wanted to elicit further, I mean, they, it's very unusual to have lawyers questioning a sitting juror. Ideally, it's done by the court. Yeah, this is, this is,  I mean, the whole episode is unusual. That's probably why we're here. I mean, sure, but the judge granted each counsel some leeway to ask only a few questions by both sides. The plaintiff's lawyer asked a question and, and the, the, the juror said, you know, yeah, like the juror said, yeah, I've got a little bit of, I forget what the exact words, but I've got a little bit of hostility or something. I'll, I'll check the language to the plaintiff's lawyer. But if the juror really was hostile and wanted to get off the jury, and we know he wasn't crazy about jury services, wouldn't he have just said, I, I can't be fair? I don't, I don't, I don't know. Maybe he didn't know those were the magic words. I, I don't know. I, I really don't know. All we know is that he repeatedly attacked the plaintiff's lawyer and then the penultimate question comes from Monsanto, which is,  you know, you understand you've got to keep your, in essence, you understand you've got to keep your views of the lawyers out of this. Can you decide this regardless of your opinions of the lawyers? And he says, if I'm being honest, that's going to resonate with me. So he, he sticks with it. And then Monsanto says, you know, asks him again, well, can you be fair? He says, I'll, I'll try to be. I will, I will. So, you know, it's not uncommon. We've seen a number of cases in the criminal context where jurors are kind of playing both sides and they're saying, yeah, I'll keep an open mind or I'll try to be fair. And then they, they, you know, exhibit their predispositions or their biases and frankly, we're entitled to a juror who isn't equivocating. A juror who's unhesitatingly, unreservedly going to be neutral and open-minded and fair and not say out of one side of the mouth I will and out of the other side of the mouth I won't. At least initially, though, this juror would seem to have been against Monsanto, right? He,   In the initial, what year? He expressed some, some, well, it seemed to be some knowledge about growing up on a farm, having a farm family, knows about Roundup. I mean, this, this is a guy as opposed to, I mean, I guess I've seen Roundup at Home Depot, but I don't have knowledge about Roundup and its effects prior to this case. So this is a guy who does. And it seems to be a not Monsanto guy. That would seem to be true and that, that's a fair point and he expressed that and then as soon as the proceedings got underway, though, he, he decided   Well, right. But at that point, Monsanto is saying,  we're, we're going to, he's certainly not seem to be in our camp. Yeah. But we're going to, he says he can be fair. Yeah. Well, we're going to, we're going to, we're going to keep him. I mean, you're talking about jury selection? Yeah. 14 days in. Jury selection. Yeah, sure, sure. Right, right. So, the point you're making, Monsanto, I guess, wasn't bothered by that.  you know, he is seated, but then it all begins to go sideways because he doesn't like the plaintiff's lawyers and he thinks they're wasting their time and, you know, he, he, I mean, whatever it is, I don't know ultimately what his predisposition about the substance, you know, how that evolved over the course of the trial. What we do know is that he repeatedly expressed hostility to us and then,  you know, not surprisingly, we would do this, you know, any party would do what Monsanto tried to do. Monsanto was happy that he was on the jury and wanted to keep him there and it gives him every opportunity to say he can be fair and then, you know, except for the second to last question where he says,  it's still going to resonate with me. So, what are you supposed to do with a juror who, you know, is so equivocal that way? Did you have a point in the trial where there were still alternate jurors available? I believe so. I know the trial court said, the trial court gave the possibility of a less than 12 person jury which the plaintiff agrees to. Both sides have to agree to that. I believe and I don't recall on the record I don't believe Monsanto may have objected in the course of trying to keep this juror. I don't know if Monsanto, I don't know what their position ultimately was about. Do you, I guess this is just a curiosity, do you know how many alternates were seen at that time? I think one or two. I know that there was an alternate excused at the end. Or there was an alternate excused. I believe so. I'll certainly check the record and I'm sorry I don't have that answer off the top of my head but I think I'm fairly sure there was an alternate at the end. I'll stand corrected if I'm misremembering the record. It's been more than 20 minutes and I want to let you address your last point. Yes, thank you Your Honor. Unless somebody objects. We can answer a lot of questions. I appreciate that Your Honor. So our last point has to do with the denial of our motion for continuing to warrant this trial. In the last week of trial our lead trial lawyer and then our second lead trial lawyer came down with COVID along with other members of the plaintiff's team and couldn't continue. And the trial judge first said well we're not going to tell the jurors first said we will tell the jurors so they can get a test and then said we're not going to tell the jurors. We were put to the position of not having those two lawyers there or not having our clients there which looks strange to the jury. Has anyone ever told the jury that maybe these lawyers are bailing on the case? They've seen two lawyers do the entirety of this case with the exception of a plaintiff and one witness. So we're talking five weeks of trial, the opening, et cetera. And now these two lawyers are gone and the juror's not really given much of an explanation other than one has the sniffles which is untrue. She says I think one tested negative for COVID. It was true as to one but not as to the other. And it was only true for a couple more hours. That other one then just tested negative. So certainly the jury would get the  that nobody had COVID. Because the judge told the jurors one person tested negative because the other one has the sniffles and we're going to continue on. So the prejudice to us here is twofold. First of all it's the kind of oddness of this picture of the jury where the plaintiffs are suddenly gone and their lead lawyers are gone. But the lawyers who stepped in are outstanding lawyers. So how do you show prejudice? They're my co-counsel. I would never say they're not outstanding. But I do want to address that. It's true of course we had other lawyers on the team. First of all those lawyers no other lawyer was there for every day of trial. Most of those other lawyers were not there for the trial. They came in and out they missed weeks, days, months, they weren't there. Now they're not there  trial. It's true as Monsanto points out that those lawyers did other things in this case. They drafted stuff, they took part in discovery, they knew the case. But we all know this is a difficult, complicated, technical trial.  are not fungible. And to ask another lawyer to step in at the end and give a closing when he hasn't been there much of the time that's prejudicial. How are we supposed to finish our case that way? That's difficult. In the motion for the continuance the plaintiffs talk about the closing arguments. They don't talk about the cross-examination. Freeling and Stewart were going to be the attorneys that were going to  closing. Yes, they were. All I can tell you is Freeling and Stewart were going to do those crosses just like they had crossed everybody else. The fact that it didn't appear in the motion they drafted overnight, I don't   the technical expertise to do this trial. That's why they were there. That's why they did everything. Even though we had other lawyers who had taken part in the case. And now we're sort of put to having to  in people who aren't competent lawyers. The trial judge gave you the option of having the attorney appear remotely. They were too sick. They couldn't. It wasn't a matter. They can't be in the courtroom. They were ill with COVID. That was not really an option. Was there any request to have a more fulsome explanation given to the jury of what was going on? Yeah. We did ask for the jury to be told. The trial court said this was going to tell them. We have that paragraph that's on the record. We wanted the jury to be informed and we expected they would be. We were surprised when the trial judge minimized it all. Anything else? Thank you. Thank you. We'll see you again. Yes. Good morning and may it please the  My name is Stephanie Wittenauer and I  the defendant of Howell and Monsanto and Monsanto  in this case. The trial court in this case oversaw seven straight weeks of pre-trial and trial proceedings and after sitting through five full weeks of  and nineteen witnesses all twelve jurors came to the same conclusion. They returned a unanimous verdict in favor of  Nothing in this appeal warrants reversal of the trial court's judgment on that jury verdict. And I want to start with the first point on appeal which is the alleged instructional error. The parties agree that on this point of appeal like on every point in this case the standard of review is abuse of discretion not should or could the trial judge have done something differently but did the trial court abuse its discretion in using a form of the pattern instruction and did plaintiffs show prejudice as a result of that. This was the case involving one allegedly tortious actor Monsanto.  argued that Monsanto was that Monsanto's conduct in manufacturing and selling PCBs and Roundup was what caused plaintiff's cancers. Monsanto presented evidence first and foremost that Roundup and PCBs don't cause cancer at all period. That was Monsanto's primary defense. Now Monsanto also although it did not have the burden to do so Monsanto also informed the jury and presented evidence that the vast majority of cases of non-Hodgkin's lymphoma are caused by copying errors in our own body's internal cell replication process. In other words, natural causes is what we might call it for someone who's not a scientist. I want to be very clear that there was no evidence in this case that the actions of any third party were a proximate cause of any plaintiff's non-Hodgkin's. But what difference does it make whether the other causes the multifactorial causes, the other ones are another person or natural causes or the plaintiff's own conduct? What difference does that make? If there are multiple causes the jury still needs to be told that the proximate cause does not need to be the only cause. It doesn't matter. Why does it matter? I guess is the question. A couple reasons. First of all, I think the case law is very clear that the language a cause does adequately inform a jury that there could be multiple causes. That's not my question. Yes, but on the second point, I think the reason that it's different is because the distinction, in a case where you have a concurrent cause caused by another actor, whether it's a negligent actor or a non-negligent actor, the second     there's some responsibility, doesn't relieve the defendant of responsibility. So in other words, the jury doesn't think that the plaintiff could obtain recovery elsewhere from some other person. In this case, obviously the jury knew that plaintiffs couldn't go out and sue their bodies for the naturally replicating errors. So I think that's really the difference and is the reason why the second sentence exists and it should be most appropriately  So you keep the jury from thinking about some other potential defendant who could have liability and therefore, is that what you're saying? Yes, that's exactly what I'm  So the jury in this case knew that naturally occurring causes don't have another liability. But I also do think that the trial court was determining this in real time whether or not to get the short form or the long form. The trial court said there was a single defendant and the case law is clear and the notes on use that when there's a single defendant, the short form is a proper form of the instruction to use. But also, the trial court made the point that this is not a car accident case and the trial court looked at this in real time and said, last or nearest cause doesn't make any sense to me. It didn't make any sense to Judge Ramos when she was reading it and she had sat through the entire trial. The cases cited on 1501 by really both parties are most of them are med mal cases or they are single accident cases like a car accident, a forklift accident. They are not these toxic tort cases and Judge Ramos said that second sentence is confusing in a toxic tort case because what does last or nearest cause mean for a long term exposure case like this? And so she used her discretion to omit that optional language. I do want to talk about the Blahovich case in particular because appellants make that the case that they are hanging their hat on their heel. Blahovich is not the silver bullet that plaintiffs claim it is and it is certainly not the foundational case on this issue. This case was never cited by the appellants below to the trial court either in real time during the trial or in post trial motions. It is not cited in a single case cited by either party in this case and in fact the last time any Illinois appellate court cited the Blahovich case for any proposition was in 1982 and in that case it was cited by the dissent on a completely different issue.  does not make a broad proclamation that the a cause language is not enough to inform a jury that there could be  causes. There are many ways to distinguish Blahovich beyond that which are in our brief but critically and I believe that Your Honor picked up on this in a question today, there were two instructional errors in Blahovich and there is literally one sentence of analysis as to those instructional errors. So it's just simply not a case that stands for what appellants say but it stands for all of the cases that post-date it say that a cause is plenty, the Campbell case that we cite, the Hadjian case that we cite, so I think the fact that appellants are hanging their hat on the Blahovich case is very telling in this context because it's just not a case that stands for what appellants say but it stands for all of the cases that post-date it say that a cause is plenty, the                 a cause is  plenty, the Campbell case that we cite, so I think the fact that appellants are hanging their            a cause is plenty, the Campbell case that we cite, so I think     Blahovich case  is plenty, the   so I think the fact that appellants are hanging their                  appellants are hanging their hat on the Blahovich case is very telling in  because it's                          not a case that   appellants say but it  all of the cases that post-date     Blahovich case  so I think the fact that appellants are hanging their hat on the Blahovich case is very telling in   stands for   the manifest weight of the evidence and I think that we all do understand the timeline here but I just want to make clear that the juror was not challenged by either party. In fact, it was plaintiff's counsel who advocated for him moving to the second round of jury selection when Monsanto's counsel raised kind of a question about his impartiality. Plaintiff's counsel said, no, no, he should move along, he should move to the second round. Plaintiff's counsel tendered the panel that included the juror and Monsanto accepted the tirade that was talked about. I was there, it was an open court, it was not on the record, it was actually jury selection took place one week and the following Monday opening statements occurred. As you can imagine, multiple jurors showed up that Monday and said, I have a problem serving on a five week jury, I'm really busy, I can't do this. So the judge brought in each one of these jurors and said, no, you're going to stay on the jury pretty much. So he was one of, it was either three or four jurors that expressed a  concern with staying on the  He was frustrated to be sure. There is nothing on the record about this tirade. And two weeks later, one of plaintiff's counsel said, oh, he was pointing at us during that time. That's the only thing on the  There was never, there was never anything on the record and the appellate court cannot reverse based on something on the record that was not on the record. And it is not how I remember it. I think certainly plaintiff's counsel would have said, brought that up to the court in real time before opening statements that that had actually occurred. It was actually recent. Right on note, mid-trial, very critical of the plaintiff's case, right? That's pretty unusual. Isn't that note itself evidence of  I don't think it's evidence of impartiality in the facts of the case and the instructions. I think that it's evidence that He's just a right-thinking juror. Once a trial starts, yes, jurors start forming opinions about things. In the golden case that we cite in our brief, the juror actually specifically said, I am having trouble remaining unbiased. Can I please get off the jury? Specifically said, I can't be biased. And the appellate court said that it was not an abuse of discretion to not remove or even question that juror further. Here, Judge Ramos decided to cross all the T's and dot all the I's and question the juror further about this. I believe the golden case also said it's not unusual for a juror to start forming beliefs about things. I also want to point out that nothing that this juror said indicated that he had a bias about the evidence or the facts of the case. And he was specifically, he might have thought that plaintiff's counsel wasn't presenting the case that he would have. He was clearly frustrated with the pace of the trial. But when he was specifically asked, will you be able to follow the jury instructions and the law, he said, I will. And the court even said, do you still stand by the statement in your letter that you are keeping an open mind and you don't have prejudgments about the case? And he said, I am. He repeatedly said that he was maintaining an open mind, that he would follow the instructions of the jury and     And he   And the   do you stand by the statement in your letter that you are keeping an open mind        and you don't have prejudgments about the case? And the court even said, do you stand by the statement in your letter that you are keeping an open mind? And the court even said, do you stand by the statement in your letter that  keeping an open mind? ... I do want to talk about the third issue. I do want to point out listed a misstatement that was made here. Mr. Stewrt, the two ill attorneys did not do everything in front of the jury before this. Mr. Johnson cross-examined with Dr. Kohana and Mr. Coverly.  the whole  Mr. Coverly examined all four of the plaintiffs in the case.  memorable to jurors. To say these attorneys had not been in court is simply not true with respect to Mr. Coverly. Mr. Boundas, the named partner of his lawyer,    sitting there through the entire month of August and all of a sudden the lawyers that were there every day of the trial all of a sudden are gone. And the jurors are still there and having work to do. With no explanation, right? Isn't there a potential for the plaintiffs   I think it's very hard to tell from the transcript that that was not used in a flippant way as I think the plaintiffs have been saying it was. But they were told that both of those attorneys were ill and actually plaintiffs closing     argument began with a statement from plaintiffs counsel saying Mr. Freeling and Mr. Stewart could not be here today. There is nowhere they would rather be than here today in this courtroom. So the jurors were made aware that these attorneys were ill, that they wanted to be there, but that they couldn't be there. And I don't think that it is appropriate to reverse and find court abuse of  and find that there was prejudice based on the potential that a juror might have thought something. I think it's important to point out that even on  appellants have not shown a single question that Mr. Stewart and Mr. Freeling would have asked differently, a single thing that they would have said differently, and that makes sense. These were highly credentialed, highly qualified attorneys who did a fantastic job when they stepped in towards the end of the trial. And the court's decision to maintain the trial and not lose all of the work, I will point out that the standard is much higher for a continuance or mistrial once a trial has actually started. Almost all the cases are pre-trial. This isn't just the trial that started. This is the trial that  almost finished. Plaintiffs had already presented all of their evidence in the case. We were well into Monsanto's case when this occurred and on the last week of  So unless there are any other questions. Okay, thank you. So I would like to begin on the 1501 point. Your Honor asked for a reason. What's the reason that this would be different? And counsel from Monsanto suggests the reason is           that the jury doesn't know there's someone else to  That's inventive but there's no indication whatsoever that that's what 1501 is talking about. 1501 simply talks about causes and those causes can be anything. They can be the  they can be your own body, they can be a disease process. There's no hint in any of this or in any case that I'm aware of that what they're really getting at is they don't want to confuse the jury about suing someone else. That doesn't make sense. These other natural causes can also eliminate a plaintiff's recovery. So it simply there is no in the end of the day there is no reason why there should be a distinction here between tortfeasors and other causes and indeed the instruction doesn't make that distinction. It talks about something or outside instrumentalities and the notes on use. Also counsel suggests that well this language in the first sentence of the bracketed portion of the instruction about the last cause or the only cause doesn't apply in a toxic tort case. I don't know why that's true at  That doesn't make sense. These causes are hitting the body at different times. For example, as one of the experts testified, you can have a predisposition medically but you can get hit at the end with an environmental exposure that triggers the cancer. So the timing could matter. But regardless of that, the rest of this instruction is essential, especially the second sentence about combination with another cause. That's the key thing we're missing here given that it was a big part of our necessary response essentially to Montana's positing other causes. She points out that Vlahovic is not a silver bullet. And look, I don't disagree. We don't say that Vlahovic lays down a per se rule that in every case you've got to give the full instruction. It doesn't say that. It's just an example from the highest court of  of a case where when what is the issue is multi-factorial causation, that to fully and comprehensively inform the juror, you should charge them on 1501. And it's a willingness to reverse in that case. So, yeah, every case is a little bit different with its own facts. We don't say that in every case you have to use the full charge. You can never give the first sentence only. What we say is this is a case like Vlahovic that came down to causation, complicated, technical,  If ever there's a case where the full long form is necessary, we think this is it. She says jurors weren't misled because of the A cause issue. Respectfully, that's not the standard. We shouldn't have to sit here and guess did jurors understand, did they get the nuance meaning of A versus B when it was in some questioning before closing, when the lawyers argued it. What we're trying to do   information to the jurors about applicable principles of law. Everything shouldn't be based on word. Again, if A cause was all that mattered, we wouldn't have a long form. This is about combined causation. That's what the jury wasn't told from the neutral only person in the room who could have provided a most passionate official explanation of the law. So it didn't matter that the experts talked about that. I know. The experts testified for days and days and days for weeks all together about a whole rasp of  To say that a juror is supposed to remember that a few questions, which I don't know where that is in the record, I'll take a look at   There are times when experts asked A cause. It's not remotely like a jury instruction. A juror is supposed to remember that from two weeks ago. At that point, why call the experts if we're going to rely on the instructions? I think there's a reason for  And to sort of base things on, well, I was questioning an expert two weeks ago and I said A cause. I think it's fanciful to think that would matter to a jury's understanding not of the scientific evidence the  are opining on but of the evidence       there. I think it's a good way to try to  something like that. I think that's a good way to do something like that. I think it's a good way to do something like that. I  it's a good way to do something like that. I think it's a good way to do something like that.   it's a good way to          way to do something   I think it's a good way to do  like                        that.  think  a good  to   like that.  think it's a good way   something like that. I think it's a good way  to do like that. I think it's  good               that.   it's a good  way to do  that. I            it's      like that. I think it's a good way to do like that.     good        it's      like that. I think it's a good way to do like                good    like that. I  it's a good way to  like that. I think it's a good way to do like that.   it's  good    like that. I think it's a good  to do like that. I think  a  way to do like that. I      think it's a       I  it's